IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BAKERY AND CONFECTIONERY UNION AND INDUSTRY INTERNATIONAL PENSION FUND<br><br>and<br><br>TRUSTEES OF THE BAKERY AND CONFECTIONERY UNION AND INDUSTRY INTERNATIONAL PENSION FUND<br>10401 Connecticut Avenue<br>Kensington, MD 20895-3960,<br><br>Plaintiffs<br><br>v.<br><br>ENDICO POTATOES, INC.<br>160 N. Mac Questen Pkwy<br>Mt. Vernon, NY 10550,<br><br>Defendant | Civil Action No. _____ |

COMPLAINT

Introduction

1.       This is an action to collect delinquent contributions and withdrawal liability that the Defendant owes to the Plaintiffs.  The action is brought pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq., as amended by the Multiemployer Pension Plan Amendments Act of 1980 (hereinafter "ERISA").

Jurisdiction and Venue

2.       The Court has subject-matter jurisdiction of this action under 29 U.S.C. §§ 1132 and 1451(c).

3.      Venue is properly laid in this Court pursuant to 29 U.S.C. § 1132(e)(2) and § 1451(d), because this is the district in which the pension plan is administered.

Parties

4.      Plaintiff Bakery and Confectionery Union and Industry International Pension Fund (hereinafter referred to as "Pension Fund") is a trust fund established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 186(c)(5).  The Pension Fund is an employee benefit plan within the meaning of Sections 3(2) and 3(3) of ERISA, 29 U.S.C. § 1002(2) and (3), and is maintained for the purpose of providing retirement and related benefits to eligible participants.  The Pension Fund is also a multiemployer pension plan within the meaning of Section 1002(37) of ERISA, 29 U.S.C. § 1002(37).  It was established and is maintained pursuant to an Agreement and Declaration of Trust, most recently amended through June 30, 2009 ("Trust Agreement")

5.      Plaintiff Trustees of the Bakery and Confectionery Union and Industry International Pension Fund (hereinafter referred to as "Plaintiff Trustees") are fiduciaries within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are the plan sponsor of the Pension Fund within the meaning of Section 3(16)(B) of ERISA, 29 U.S.C. § 1002(16)(B).

6.      All Plaintiffs maintain their principal place of business at 10401 Connecticut Avenue, Kensington, Maryland 20895.  Plaintiff Pension Fund is administered at that location, within the District of Maryland.

7.      Defendant Endico Potatoes, Inc. (hereinafter referred to as "Endico") is an employer in an industry affecting commerce within the meaning of Sections 3(5), 3(11) and 3(12) of ERISA, 29 U.S.C. § 1002(5), (11), and (12).

8.      Endico is a corporation residing and doing business in the State of New York.

## Statement of Facts

9.      Endico was party to a series of collective bargaining agreements with the Bakery, Confectionery, Tobacco Workers and Grain Millers International Union, Local 102 ("Local 102"), that required Endico to make contributions to the Pension Fund over a period of years ending February 1, 2019. Those agreements, as in effect until February 1, 2019, included Endico's promise to be bound as a party by the Trust Agreement.

10.     One of the collective bargaining agreements between Endico and Local 102 was in effect for all of 2012.  That agreement required Endico to make contributions to the Pension Fund at the rate of $0.6350 per hour for all hours paid to each employee working in a job classification covered by the collective bargaining agreement, to a maximum of 40 hours per week for any one employee.

11.     The collective bargaining agreement in effect between Endico and Local 102 in 2015 through 2018 expressly stated:  "Contributions shall be paid from the first day the employee begins working in a job classification covered by the Collective Bargaining Agreement between the Employer and the Union, and shall be paid on behalf of all employees in covered job classifications – there are no exceptions for employees who are not members of the Union, temporary, seasonal, or part-time employees, for leased employees or for any other type of employee."  The contribution obligation also expressly applied to each hour for which such an employee "receives pay in lieu of work (such as holiday, vacation, pro rata vacation, and severance pay)," up to the weekly maximum of 40 hours for any one employee.

12.     The Pension Fund's actuaries certified that it was in "critical status" for the plan year 2012, as required by ERISA § 305(b)(3), as inserted by § 202 of the Pension Protection Act of 2006 ("PPA") and further amended, 29 U.S.C. § 1085(b)(3).  As a result of that certification,

all contributing employers were required by 29 U.S.C. § 1085(e)(7) to pay a statutory surcharge equal to 5% of their contractual contribution rates, effective June 1, 2012.

13.     In November 2012, the Plaintiff Trustees adopted a "Rehabilitation Plan" in compliance with 29 U.S.C. § 1085(e)(3).  The Rehabilitation Plan included two schedules of contribution increases and benefit reductions, known respectively as the "Preferred Schedule" and the "Default Schedule."  The Preferred Schedule required 5% annual contribution rate increases in addition to the statutory surcharge.  The Default Schedule required 10% annual contribution rate increases in addition to the statutory surcharge.

14.     Section VI.E of the Rehabilitation Plan, adopted in 2012 and still in effect, provides that if an employer elects the Preferred Schedule but subsequently "enters into a [collective bargaining agreement] under which the Employer will cease participation in the Pension Fund," the employer "will become retroactively subject to the Default Schedule of contributions for the affected Account as of the date that the Preferred Schedule took effect."

15.     After the Trustees adopted the Rehabilitation Plan, the Pension Fund circulated notice to contributing employers, including Endico. This notice described the contribution schedules and other rules of the rehabilitation plan, including the provision of Section VI.E applying to an employer that ceases participation in the Plan pursuant to a collective bargaining agreement.  The notice was accompanied by an Election Form for Employers and Locals to sign if they agreed to the Preferred Schedule through collective bargaining. The Election Form explicitly incorporates "all Fund rules governing contributions to the Fund set forth in the PPA Schedules."

16.    In an agreement dated December 20, 2012, Endico and Local 102 adopted the Preferred Schedule under the Rehabilitation Plan effective December 31, 2012, using the standard Election Form.

17.    On January 28, 2019, the Pension Fund received notice that Endico had entered into a collective bargaining agreement with Local 102 providing that Endico would withdraw from participation in the Pension Fund effective February 1, 2019.  As a result of that collective bargaining agreement and the provision of the Rehabilitation Plan quoted in paragraph 14, Endico was retroactively subject to the Default Schedule of contributions as of January 1, 2013, when its Preferred Schedule had taken effect.

18.    After applying the 5% statutory surcharge that was effective June 1, 2012, and the Default Schedule's 10% annual contribution rate increases to the $ 0.6350 contribution rate stated in Endico's 2012 collective bargaining agreement, the contribution rates required of Endico beginning in 2013 were:

| Year | Rate |
|------|------|
| 2013 | $0.7335 per hour |
| 2014 | $0.8068 per hour |
| 2015 | $0.8875 per hour |
| 2016 | $0.9763 per hour |
| 2017 | $1.0739 per hour |
| 2018 | $1.1813 per hour |
| 2019 | $1.2994 per hour |

*Delinquent Contributions*

19. On April 9, 2018, an independent certified public accountant ("the auditor") performed an audit of Endico's records for the calendar years 2015 through 2017, for the purpose of determining whether Endico had paid the Pension Fund all of the contributions that its collective bargaining agreements required. That audit report was provided to Endico, and Endico was given an opportunity to submit any documentation that might support a challenge to the accuracy of the auditor's findings.  Endico provided no such documentation.

19.     The deficiency in contributions reported by the auditor was $13,392.26 for the years 2015 through 2017.

20.     The auditor found that the deficiency was primarily the result of Endico's failing to report hours paid to new employees working in covered job classifications, failing to report all hours paid to employees working in covered job classifications, and failing to report hours of vacation for which employees were paid.  All of the unreported hours are expressly covered by Endico's contribution obligation, as defined in the collective bargaining agreement provisions quoted in paragraphs 10 and 11.

21.     The Pension Fund has demanded payment of the deficiency identified by the audit report, but Endico has not paid any of the deficiency that it owes for the years 2015 through 2017.

22.     At all relevant times, Article V, Section 4 of the Trust Agreement has required payment of interest by an employer that is in default in the payment of contributions for a period of more than ten (10) days, as well as attorney's fees and costs incurred in enforcement of the employer's obligations.  At the rates of interest specified in the Pension Fund's policy on

delinquent contributions, interest is due in the total amount of $2,727.49 through July 31, 2019, and interest continues to accrue at the rate of 7.5%.

### Default Schedule Contribution Rate Deficiency

23.     The Pension Fund has calculated the difference between the contributions that Endico remitted from January 1, 2013 through January 31, 2019, at the Preferred Schedule rates and the contributions that are retroactively owed at the Default Schedule rates.  The principal amount of that difference is $51,611.80 (not including the audit deficiencies described in paragraphs 19-21).

24.     By letter dated April 11, 2019, the Pension Fund notified Endico that it was obligated to pay this amount to the Pension Fund with interest, and demanded payment within 15 days.  Endico has not paid any part of this amount.

25.     Under the Pension Fund's policy on delinquent contributions, interest on the principal amount of $51,611.80 was $5,332.77 as of September 6, 2019, and interest continues to accrue at the rate of 7.5%.

### Withdrawal Liability

26.     As a result of the agreement providing for Endico's withdrawal from the Pension Fund, Endico permanently ceased to have an obligation to contribute to the Pension Fund as of February 1, 2019, and incurred a "complete withdrawal" within the meaning of 29 U.S.C. § 1383(a)(1).

27.     As a consequence of that complete withdrawal, 29 U.S.C. § 1381(a) requires Endico to pay withdrawal liability to the Pension Fund.

28.     The Pension Fund's Agreement and Declaration of Trust grants the Trustees "full authority to adopt rules and regulations setting forth procedures for the determination and

collection of withdrawal liability." According to those procedures, the Pension Fund made a determination of the amount of Endico's withdrawal liability in compliance with all applicable statutory requirements and the rules of the Pension Fund. The Pension Fund duly notified Endico of the determination and made a demand for payment by letter dated April 11, 2019. That letter sets forth a schedule of installment payments that Endico is obligated to pay to the Pension Fund in order to satisfy Endico's withdrawal liability.

29.     Pursuant to the schedule of payments in the April 11, 2019, letter, Endico was required to pay monthly withdrawal liability installments of $4,599 each, beginning on June 1, 2019 and continuing for 240 months. Endico has not made any of those installment payments.

30.     Endico has not requested review of the withdrawal liability assessment pursuant to 29 U.S.C. § 1399(b)(2) and no arbitration proceeding has been initiated pursuant to 29 U.S.C. § 1401(a).

31.     In accordance with 29 U.S.C. § 1399(c)(5)(A), the Pension Fund notified Endico by letter dated July 2, 2019, that Endico was in default and would owe the entire amount of the withdrawal liability immediately unless it paid the past-due installments within 60 days after receipt of the July 2, 2019, letter.

32.     Despite its clear, unequivocal obligations under ERISA, Endico has at all times relevant to this suit failed and refused to pay any of the required installments of its withdrawal liability.

33.     Because of Endico's default, the full amount of the withdrawal liability is due and owing to the Pension Fund. The present value of the 240 monthly installments as of June 1, 2019, was $715,338.

34.     The Pension Fund is also entitled to interest on the full amount of Endico's

withdrawal liability at rates prescribed by the Pension Benefit Guaranty Corporation, beginning

on June 1, 2019, the date of the first unpaid installment.  29 USC § 1399(c)(5); 29 C.F.R §

4219.32.

<u>Statement of Claim</u>

## COUNT I
### (Pursuant to Section 515 of ERISA)

35.     Plaintiffs reassert all of the facts alleged in paragraphs 4 through 34.

36.     Endico is delinquent in its obligations to the Pension Fund in the principal amount

of $13,392.26, by virtue of its failure to pay all contributions required by the collective

bargaining agreements for employees working in the bargaining unit represented by Local 102 or

paid in lieu of work, as found by the auditor for years 2015 through 2017.

37.     Endico's failure to make its required contributions is a violation of 29 U.S.C.

§ 1145.

38.     Under ERISA, 29 U.S.C. § 1145 and 29 U.S.C. § 1132(g)(2), Endico is obligated

to the Pension Fund and Plaintiff Trustees to pay the full amount of its delinquent contributions

plus interest, liquidated damages, attorney's fees, and costs of this action.

## COUNT II
### (Pursuant to Section 515 of ERISA)

39.     Plaintiffs reassert all of the facts alleged in paragraphs 4 through 34.

40.     Pursuant to the Pension Fund's Rehabilitation Plan, Endico is obligated to pay the

$51,611.80 difference between the contributions it remitted to the Pension Fund at the Preferred

Schedule rates and the amount that was due retroactively at Default Schedule rates for the period

from January 1, 2013 through January 31, 2019.

41.     Endico's failure to pay these retroactive contributions is a violation of 29 U.S.C. § 1145.

42.     Under 29 U.S.C. § 1145 and 29 U.S.C. § 1132(g)(2), Endico is obligated to the Pension Fund and Plaintiff Trustees to pay the full amount of all delinquent contributions, plus interest, liquidated damages, attorney's fees, and costs of this action.

## COUNT III
### (Pursuant to Section 515 of ERISA)

43.     Plaintiffs reassert all of the facts alleged in paragraphs 4 through 34.

44.     29 U.S.C. § 1451 provides that any failure of an employer to make a withdrawal liability payment when due shall be treated as a delinquent contribution within the meaning of Section 515 of ERISA, 29 U.S.C. § 1145.

45.     29 U.S.C. § 1145 requires the court upon entering judgment in favor of a plan in such an action to award not only the unpaid withdrawal liability, but also interest, liquidated damages, attorneys' fees and costs of the action.  That interest, in cases where an employer defaults on its obligation to pay withdrawal liability, is calculated on the full amount of the outstanding withdrawal liability from the due date of the first installment payment that was not timely made.  29 U.S.C. § 1399(c)(5).  In this case, that date was June 1, 2019.

46.     The Pension Fund is therefore entitled to judgment against Endico in the full amount of $715,338, plus interest on that amount from June 1, 2019, plus liquidated damages, attorneys' fees, and costs of this action.

<u>Prayer for Relief</u>

WHEREFORE, Plaintiff Pension Fund and Plaintiff Trustees demand judgment from Endico as follows:

1.    A judgment in the full amount of the contribution deficiency Endico owes for employees performing work or receiving pay in lieu of work in job classifications covered by the collective bargaining agreement, for periods from January 1, 2015 to December 31, 2017, at the rates required by the Default Schedule, together with interest to the date of judgment and liquidated damages;

2.    A judgment in the full amount of the difference between the contributions Endico remitted at Preferred Schedule rates and the retroactively applicable Default Schedule rates for periods January 1, 2013 through January 31, 2019, as required by the Rehabilitation Plan, together with interest to the date of judgment and liquidated damages;

3.    A judgment in the full amount of the withdrawal liability owed by Endico, together with interest to the date of judgment and liquidated damages;

4.    Attorneys' fees and costs of the action; and

5.    Such other legal and equitable relief to which Plaintiffs are entitled.

Respectfully submitted,

/s/ Julia Penny Clark_____
Julia Penny Clark (Bar No. 12401)
Ramya Ravindran*
Joshua A. Rosenthal[†]
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth Street, N.W.
Suite 1000
Washington, D.C.  20005
Counsel for Plaintiffs

* Application forthcoming for membership in the District of Maryland bar.

[†] Admitted in New York and California, practicing in the District of Columbia under supervision.